```
              IN THE UNITED STATES DISTRICT COURT
             FOR THE WESTERN DISTRICT OF TENNESSEE
                        WESTERN DIVISION
```

| | | |
|---|---|---|
| H.D. ADCOCK & ASSOCIATES, INC. and CAROLINA BEAUTY SYSTEMS, INC., | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 10-2164 |
| v. | ) ) | |
| JOHNSTON & HAYDEN, L.L.C.; MICHAEL DAVID JOHNSTON, CPA, individually and in his representative capacity; and RICHARD ELLIS HAYDEN, individually and in his representative capacity; | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

### ORDER GRANTING DEFENDANTS' MOTION TO DISMISS FRAUD CLAIMS

Plaintiffs H.D. Adcock & Associates, Inc. ("Adcock") and Carolina Beauty Systems, Inc. ("CBS") (collectively, "Plaintiffs") assert claims for breach of contract, negligence, fraud, and violation of the Tennessee Consumer Protection Act against Defendants Johnston & Hayden, L.L.C. ("J&H"), Michael David Johnston ("Johnston"), and Richard Ellis Hayden ("Hayden") (collectively, "Defendants"). (See Compl. for Damages, ¶¶ 25-38, ECF No. 1-1.) ("Compl.") Before the Court is Defendants' Motion to Dismiss Fraud Claims. (See Defs.' Mot. to Dismiss

Fraud Claims, ECF No. 8.) ("Defs.' Mot.") For the following reasons, Defendants' motion is GRANTED.

## I. Background

Adcock and CBS owned and operated schools in Tennessee and North Carolina that were authorized to participate in federal student assistance programs under Title IV of the Higher Education Act of 1965, 20 U.S.C. §§ et seq. ("Title IV"). (Compl. ¶¶ 5-6.) Students attending those schools primarily financed their educations using Title IV funds. (Id. ¶ 6.) To comply with regulatory requirements, Adcock and CBS needed annual audits of their financial statements and other compliance reports. (Id. ¶ 8.)

Johnston and Hayden represented to the owners and managers of Adcock and CBS that they were experienced auditors who were familiar with Title IV's regulatory requirements and had performed audits and examinations for more than sixty schools participating in Title IV. (See id.) Based on those statements, Adcock and CBS hired J&H to conduct audits and examinations in Memphis, Tennessee. (Id. ¶ 9.) From 2005 to 2009, Defendants performed that work for Plaintiffs. (Id. ¶ 8-9.) While serving as Plaintiffs' auditors, J&H issued unqualified audit opinions and made no material adverse findings about either institution's operations. (Id. ¶ 11.)

Despite those reports, during the period J&H audited Plaintiffs, one of Adcock's employees engaged in a scheme to misappropriate funds from the Plaintiffs' federal bank accounts (the "Bank Accounts") that resulted in checks being issued from those accounts to the employee.[1] (Id. ¶ 11.) While conducting its audits and examinations at Adcock's Memphis office, J&H interacted primarily with that employee. (Id. ¶ 12.) Rather than conduct independent audits of the Bank Accounts, J&H relied on the employee's representations. (See id.) Because Defendants did not review statements, checks, or other records from the Bank Accounts, the employee's scheme went undetected for years, causing financial losses to Plaintiffs. (Id. ¶ 13.)

Eventually, the federal government conducted an investigation in February 2009. (Id. ¶ 14.) On February 20, 2009, federal investigators informed Plaintiffs that approximately $1.3 million had been misappropriated from the Bank Accounts. (Id.) The investigators seized Plaintiffs' operational records, including bank and business records. (Id.)

Although Defendants had access to those records from the Office of the Inspector General for the U.S. Department of Education, they did not identify or share the records, despite Plaintiffs' requests. (Id. ¶ 15.) Defendants agreed to provide

---

[1] Plaintiffs' complaint does not provide the name of the alleged scheming employee.

3

the information Plaintiffs requested and to meet with Plaintiffs' agents, but failed to do so. (Id. ¶ 16.) According to Plaintiffs, if Defendants had performed their work as required by applicable regulations and in accordance with the standard of care, Plaintiffs would have discovered the employee's scheme before the federal investigation. (Id. ¶ 17.) Had they discovered the scheme, Plaintiffs allege that they would have avoided losses due to the federal investigation and would not have been forced to sell their businesses at reduced prices. (Id.)

Specifically, Plaintiffs allege that Defendants failed to follow generally accepted auditing standards such as due care and independence. (Id. ¶¶ 19-20, 22.) According to Plaintiffs, Defendants failed to assess the risk of employee misappropriation correctly and the effectiveness of internal controls over financial reporting because they did not obtain sufficient and appropriate evidence for the opinions expressed in their audits and reports. (See id. ¶ 21.) By relying on Defendants' inaccurate audits and reports, Plaintiffs suffered economic loss. (Id. ¶ 24.)

Plaintiffs filed this action in the Circuit Court of Shelby County, Tennessee on February 3, 2010, asserting claims for breach of contract, negligence, fraud, and violation of the Tennessee Consumer Protection Act. (Id. ¶¶ 25-38.) Defendants

4

removed the action to this Court on March 10, 2010. (See Notice of Removal, ECF No. 1.) On March 15, 2010, Defendants filed the motion now before the Court. (See Defs.' Mot.) Plaintiffs have not responded, and the time for doing so has passed. (See Agreed Order Extending Deadline to File Resp. to Mot. to Dismiss Intentional Fraud Counts, ECF No. 13 (granting Plaintiffs until April 16, 2010 to respond to Defendants' motion).)

**II.  Jurisdiction & Choice of Law**

Defendants assert that this Court has jurisdiction based on diversity of citizenship under 28 U.S.C. § 1332(a). Adcock is a Tennessee corporation with its principal place of business in Memphis. (Compl. ¶ 1.) CBS is a North Carolina corporation doing business through Adcock in Memphis. (Id. ¶ 2.) J&H is a Louisiana corporation with its principal place of business in that state. (Id.; Notice of Removal ¶ 2.) Johnston and Hayden are citizens of Louisiana. (Notice of Removal ¶ 2.) Therefore, complete diversity exists. See V & M Star, LP v. Centimark Corp., 596 F.3d 354, 355 (6th Cir. 2010) (citation omitted). Because Plaintiffs seek $6 million in actual and compensatory damages and $6 million in punitive damages, more than $75,000 is in controversy. (See Compl. ¶ 41.) Therefore, the amount-in-controversy requirement is satisfied. See 28 U.S.C. § 1332(a).

In a diversity action, state substantive law governs. Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938). A federal district

5

court is required to apply the choice of law rules of the state in which it sits. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941). "Otherwise the accident of diversity of citizenship would constantly disturb equal administration of justice in coordinate state and federal courts sitting side by side." Id. Therefore, Tennessee choice of law rules apply.

Tennessee has adopted the "most significant relationship" rule for torts under the Restatement (Second) of Conflict of Laws, which provides that "the law of the state where the injury occurred will be applied unless some other state has a more significant relationship to the litigation." Hataway v. McKinley, 830 S.W.2d 53, 59 (Tenn. 1992). Although Plaintiffs' claims sound in both tort and contract, the fraud claim now before the Court sounds in tort. See Green v. Green, 293 S.W.3d 493, 506 (Tenn. 2009); (Compl. ¶¶ 8-9, 35-36). Plaintiffs' alleged injury occurred in Tennessee, and the Defendants assume that Tennessee law applies. (See Compl. ¶¶ 17, 25; Br. in Supp. of Defs.' Mot. to Dismiss Fraud Claims 1-3, ECF No. 8-1 ("Defs.' Br.").) No state has a more significant relationship to the litigation. Therefore, the Court will apply Tennessee substantive law.

### III. Standard of Review

In addressing a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the Court

6

must construe the complaint in the light most favorable to the plaintiff and accept all well-pled factual allegations as true. League of United Latin Am. Citizens v. Bredesen, 500 F.3d 523, 527 (6th Cir. 2007). A plaintiff can support a claim "by showing any set of facts consistent with the allegations in the complaint." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 563 (2007). This standard requires more than bare assertions of legal conclusions. Bovee v. Coopers & Lybrand C.P.A., 272 F.3d 356, 361 (6th Cir. 2001). "[A] formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Any claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Id. (citing Twombly, 550 U.S. at 555). Nonetheless, a complaint must contain sufficient facts "to 'state a claim to relief that is plausible on its face'" to survive a motion to dismiss. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (citing Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause

7

of action, supported by mere conclusory statements, do not suffice." Id. at 1949 (citation omitted). A plaintiff with no facts and "armed with nothing more than conclusions" cannot "unlock the doors of discovery." Id. at 1950.

**IV. Analysis**

To establish a claim for fraud under Tennessee law, a plaintiff must show: 1) an intentional misrepresentation about a material fact, 2) made knowingly or recklessly, 3) on which the plaintiff reasonably relied and suffered damage, and 4) that relates to an existing or past fact or constitutes a promise of future action made without intent to follow through. See Walker v. Sunrise Pontiac-GMC, 249 S.W.3d 301, 311 (Tenn. 2008) (citations omitted); First Nat'l Bank v. Brooks Farms, 821 S.W.2d 925, 927 (Tenn. 1991) (citations omitted); see also Hagen v. U-Haul Co. of Tenn., 613 F. Supp. 2d 986, 994-95 (W.D. Tenn. 2009). A cause of action for fraud may be described by a number of interchangeable names. See Hagan, 613 F. Supp. 2d at 955 (referring to "intentional misrepresentation," "fraudulent misrepresentation," and "fraud" as "synonyms") (citing Concrete Spaces, Inc. v. Sender, 2 S.W.3d 901, 904 n. 1 (Tenn. 1999)).

Although Tennessee law provides the substantive elements of a fraud claim where jurisdiction is based on diversity of citizenship, the Federal Rules of Civil Procedure provide the procedural rules, including the pleading requirements. See

8

Minger v. Green, 239 F.3d 793, 800 (6th Cir. 2001) (citation omitted). Federal Rule of Civil Procedure 9(b) states, "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P 9(b). The purpose of Rule 9(b)'s particularly requirement is "to provide a defendant fair notice of the substance of a plaintiff's claim in order that the defendant may prepare a responsive pleading." Michaels Bldg. Co. v. Ameritrust Co., N.A., 848 F.2d 674, 679 (6th Cir. 1998) (citations omitted). To comply with that requirement, a plaintiff must "at a minimum, allege the time, place and content of the misrepresentations; the defendant's fraudulent intent; the fraudulent scheme; and the injury resulting from the fraud." Power & Tel. Supply Co. v. SunTrust Banks, Inc., 447 F.3d 923, 931 (6th Cir. 2006) (citing Fed. R. Civ. P. 9(b); Coffey v. Foamex, L.P., 2 F.3d 157, 161-62 (6th Cir. 1993)). Although a district court must read the particularity requirement in light of the general policy of notice pleading under the Federal Rules of Civil Procedure, "a district court need not accept claims that consist of no more than mere assertions and unsupported or unsupportable conclusions." Hagan, 613 F. Supp. 2d at 995 (quoting Sanderson v. HCA-The Healthcare Co., 447 F.3d 873, 876 (6th Cir. 2006)).

Defendants argue that Plaintiffs' fraud allegations consist of two paragraphs in the complaint. (Defs.' Br. 3.) Those paragraphs are nearly identical. (Compare Compl. ¶ 35, with id. ¶ 36.) The first states that "Defendants committed active and passive fraud and misrepresentation in performing the audits and preparing the audit reports and other documents for the Plaintiffs." (Id. ¶ 35.) The second states, "Defendants committed intentional and negligent fraud and misrepresentation in performing the audits and preparing the audit reports and other audit documents for the Plaintiffs." (Id. ¶ 36.) Those paragraphs consist entirely of unsupported legal conclusions, which do not comply with Rule 9(b). See Hagan, 613 F. Supp. 2d at 995.

Three other paragraphs in Plaintiffs' complaint may be reasonably construed as relating to fraud. (See Compl. ¶¶ 8-9. 16.) The first states that Johnston and Hayden "represented to the Owners of Adcock and CBS and [their] management that they were experienced auditors, familiar with the applicable requirements under Title IV, and further represented that they [had] performed such services for over sixty (60) schools in the United States participating in Title IV." (Id. ¶ 8.) Building on that paragraph, the next paragraph states, "In reliance on Defendants['] claimed statements of expertise, Adcock and CBS hired Defendants to perform financial statement audits and Title

10

IV compliance examinations . . . in Memphis, Shelby County, Tennessee." (Id. ¶ 9.) A later paragraph states:

> Defendants agreed to provide . . . information and to meet with agents of Plaintiffs several times but later rescheduled or failed to follow up to provide records or have a meeting. On information and belief, Defendants engaged in such tactics or failed to respond for purposes of delay with no intent of actually cooperating so that Plaintiffs could evaluate the facts and records to protect their interests.

(Id. ¶ 16.)

None of these paragraphs or any others in Plaintiffs' complaint provides any indication about the time, place, or other circumstances of Defendants' alleged misrepresentations or Defendants' alleged scheme. See Power & Tel. Supply, 447 F.3d at 931. Without that minimum level of particularly, Defendants do not have the fair notice necessary to prepare a responsive pleading. See id.; Michaels Bldg. Co., 848 F.2d at 679. "Plaintiffs' complaint is simply too vague as to the 'who, what, where, and when' of the fraud to meet the particularity requirement." Hagan, 613 F. Supp. 2d at 966 (citing General Elec. Co. v. Latin Am. Imports, S.A., 187 F.Supp.2d 749, 754 (W.D. Ky. 2001)). Therefore, Plaintiffs' claim for fraud does not comply with Rule 9(b) and must be dismissed.

**V.  Conclusion**

For the foregoing reasons, Defendants' motion is GRANTED and Plaintiffs' claim for fraud is DISMISSED.

So ordered this 28th day of February, 2011.

                                      s/ Samuel H. Mays, Jr.
                                      SAMUEL H. MAYS, JR.
                                      UNITED STATES DISTRICT JUDGE